NEW YORK LIFE INSURANCE COMPANY *v.* GUY JACK ET AL.

1. PARTIES.   *Policy of insurance.*

> If an insurance policy be payable to the executors, administrators or assigns of the insured, and be assigned by him in his lifetime, his widow and sole heir is not a proper party co-plaintiff with the assignee of the policy in a suit at law thereon.

2. SAME.

> Even if, in such case, the widow have an agreement with the assignee of the policy for a division of its proceeds, still she is not a proper plaintiff in a suit at law on the policy.

3. DEFENSES.   *Delusive pleading.*

> A plaintiff against whom a defense of fraud exists cannot shut out proof thereof by joining an innocent party as co-plaintiff with himself.

4. EVIDENCE.   *Declarations against interest.*

> If a plaintiff hold several insurance policies, including the one in suit, and make declarations touching his right to all of them, his statements against his interests are admissible in evidence in a suit on one of the policies, although not specially mentioned in the declaration.

FROM the circuit court of Noxubee county.

HON. GREEN B. HUDDLESTON, Judge.

Guy Jack and Mrs. Lillie B. Stewart, appellees, were the plaintiffs in the court below; the insurance company, appellant, was defendant there.   The action was upon a life insurance policy issued by defendant upon the life of Chas. T. Stewart, deceased, and it was payable to the executor, administrators or as-

signs of the insured.   Plaintiff, Jack, claimed that he was an assignee of the policy, and Mrs. Stewart sued as the widow and sole heir of the decedent.   The policy was assigned to Jack a few days after its issuance, and the premiums, including the first one, were all paid by him.

The declaration alleges the assignment by Stewart to Jack, and other assignments from Jack to divers persons who reassigned to Jack, with the knowledge and consent of defendant; that the insured left no estate except policies of insurance on his life; that he owed no debts except those due to Jack, which debts are protected by said policy of insurance, and that there is no necessity for a grant of letters of administration on the estate of the deceased, Stewart, because of these facts; that Jack and Mrs. Stewart have adjusted their respective claims to the proceeds of the policy, and have agreed on a basis of settlement of the same.

There was a demurrer to the declaration, which was overruled, and pleas were filed.   The plaintiffs demurred to the third plea of defendant, which plea was in words and figures following: "And for further plea to said declaration, defendant says that plaintiff, Mrs. Lillie B. Stewart, ought not to have or recover anything from it on account of said policy, for that, by the terms and conditions of said policy, the same was made payable, in case of death, to the executors, administrators or assigns of said Chas. T. Stewart, and the said Chas. T. Stewart, prior to the bringing of this suit, duly assigned said policy, and had no interest therein at the time of his alleged death, all of which fully appears by the transfers and exhibits filed by plaintiffs with their declaration, and said plaintiff, Mrs. Lillie B. Stewart, has no interest in said policy, or the proceeds thereof, either as executor, administrator or assign of the said Chas. T. Stewart.   And this defendant is ready to verify."

The court sustained the demurrer to said plea.   Afterwards the defendant gave the following notice, under its plea of the general issue, viz.: "The plaintiffs will take notice that, on

the trial of the above cause, the defendant will introduce evidence to prove that plaintiff, Guy Jack, designing and intending to cheat and defraud the defendant, induced the deceased, Chas. T. Stewart, on the ninth day of March, 1891, to make a written application, signed by him, the said Stewart, to this defendant, for a policy of insurance on his life for $1,000, and, on the twenty-eighth day of May, 1896, being induced to do so by the said Guy Jack, he, the said Chas. T. Stewart, applied to The Mutual Reserve Fund Life Association for another policy of insurance on his life for $10,000; and on the first day of June, 1896, being induced to do so by the said Guy Jack, he, the said Chas. T. Stewart, applied to The Mutual Benefit Life Insurance Company for another policy of insurance on his life for $10,000, and that when all of said policies of insurance, amounting to $21,000, had been issued, said Jack, in pursuance of said fraudulent scheme, persuaded and induced said Stewart to assign said policies of insurance to him, and that after he had so fraudulently procured said Stewart to obtain said policies of insurance and assign them to him, Jack, as aforesaid, he, the said Guy Jack, paid the premiums due thereon, and afterwards, in order to carry out and consummate his design and purpose to cheat and defraud this defendant, he, the said Jack, induced, procured and employed one W. H. Lipscomb to wilfully, maliciously and feloniously kill and murder the said Stewart, which was done on the twenty-first day of January, 1897, when said two policies, aggregating $20,000, had been in force less than seven months, and that both said Jack and Lipscomb were jointly indicted by the grand jury of Kemper county for the murder of said Stewart, and, upon the motion of both Jack and Lipscomb, a severance was granted, and that Lipscomb was twice tried [see *Lipscomb* v. *State,* 75 Miss., 559, and *ante,* p. 223] for the murder of said Stewart, and by two juries of Kemper county convicted of the murder of said Stewart.

The plaintiffs will further take notice that on the trial of said cause the defendant will introduce evidence to prove that, be-

fore it issued said policy of insurance on the life of said Chas.
T. Stewart, he, in order to procure said insurance, made a
written application to the defendant, signed by himself, in
which he agreed that the answers given by him in said applica-
tion to the questions of the agent and examiner, which he de-
clared and warranted to be true, should be the basis of his con-
tract for a policy of insurance with the defendant.

This defendant will further introduce evidence to prove that
the answers, statements and warranties given in said applica-
tion were false and untrue in the following particulars: That
in and by said application it was inquired of the said Chas. T.
Stewart, "To whom is the insurance applied for to be payable
in the event of death?" to which he answered, "To Chas. T.
Stewart," when in truth and in fact it was taken out for the
benefit of said Jack, and the said policy was assigned to him
on the thirteenth day of April, 1891, a little more than one
month of the date."

Upon the trial much evidence was offered.    In the course of
the defendant's evidence the following question was asked wit-
ness J. A. Melton on direct examination: "I will ask you if,
about two years before the death of Chas. T. Stewart, in the
town of Scooba, Mississippi, and in the storehouse of Mr. Guy
Jack, you had a conversation with him, Jack, with reference to
certain life insurance policies which he carried on the lives of
Stewart and others, and if so, state to the jury what it was he
said about that?" . The witness stated in answer that Jack
never mentioned any particular policy and was proceeding to
relate what he said, but upon objection by plaintiffs' attorney
the court excluded the evidence.

At the close of the evidence the court below gave a peremp-
tory instruction for the plaintiffs and defendant appealed to the
supreme court.

*F. V. Brahan,* for appellant.
The court committed error in sustaining plaintiff's demurrer

to defendant's third plea because the insurance policy had been assigned under the rules of the company and Mrs. Stewart had no right to it or in its proceeds, and was improperly joined as a plaintiff in the suit. Section 664 annotated code and the cases cited—47 Miss., 599; 52 Miss., 365; 1 Chitty, 13, 80, 665. If Mrs. Stewart had an interest as the only heir of her deceased husband she could have asserted it against Jack.

It is manifest that the purpose in joining Mrs. Stewart in the suit was predicated of the idea that so joining her would deprive defendant [appellant] of the defense that Jack had murdered Stewart and otherwise had perpetrated fraud on the company, as Mrs. Stewart was not a party to such murder and fraud. · Can the law be so weak or indifferent to such issues as to permit a stranger to a contract to be joined in a suit upon an alleged interest therein which is shown not to be for a good or valuable consideration, and because of such joining deprive the defendant of recovering against a most flagrant fraud?

From a careful examination of all the evidence in this case, both documentary and verbal, it will be seen that the case was one for the jury. This case is one of the strongest for appellant on circumstantial evidence. We have a man who is notoriously insolvent, without any property or means with which to pay large life insurance premiums, carrying $21,000 life insurance, and all of it being almost contemporaneous with the issuance of the policies transferred and assigned to Guy Jack, who paid the first and subsequent premiums as they matured, and $20,000 of this amount was less than seven months old when the insurer died. The insured died suddenly from strychnine poison prescribed and administered by Dr. W. H. Lipscomb, who examined Chas. T. Stewart for life insurance, and who, in his medical examination report, recommended Stewart as a first-class risk. Both Jack and Lipscomb, in their proof of death to the insurance company, gave the cause of death as strychnine poison.

The court further erred in excluding as incompetent the tes-

timony of the witness J. A. Melton, because, as was contended by the other side, the conversation did not refer specially to the policy sued on, but it was shown that Jack, at that very time, owned the policy sued on, and the conversation, though general as to all policies owned by Jack at that time, was applicable to the policy sued on, and the testimony was admissible.

*T. W. Brame*, for appellees.

The court properly sustained plaintiffs' demurrer to defendant's third plea. If it erred, the error was waived and cured by defendant abandoning its special plea and giving notice under the general issue of its line of defense. There was no error of the court in giving the peremptory instruction for plaintiffs. The policy had matured the conditions upon which defendant was to pay. Defendant could not prevent as many assignments as the holder or holders of a policy may deem necessary. There is nothing in the terms of the policy prohibiting an assignment, even before loss that would invalidate the loss. All that the appellant could complain of would be that it ought to be protected against assignees, to whom it had notice that the policy had been assigned. To the plea that Jack had no interest in the policy because of its assignment to Rosenbaum, plaintiffs replied that Rosenbaum had, prior to said suit, reassigned the policy to Jack and filed with their replication the reassignment. This is not questioned.

WHITFIELD, J., delivered the opinion of the court.

By the terms of the contract—the policy of insurance—the appellant contracted to pay "the insured's executors, administrators or assigns." The policy was assigned, and not to Mrs. Stewart. She was not the executor, administrator or assign of the insured, and had no standing in court, in this case, as plaintiff. She was a stranger to the contract. If she had an agreement with Jack for a division of the proceeds of the pol-

icy, that was a matter of contract between her and Jack with which the appellant had no concern. And it is not permissible for Jack to shut out proof competent against him by the easy choice of joining as co-plaintiff with himself one who has no standing to sue on the contract of insurance. The demurrer to plaintiff's third plea should have been overruled.

It was error to exclude the testimony of J. A. Melton as to the conversation had with Jack as to all the policies in appellant's company Jack had, the conversation relating to all, and to this one as embraced in all such policies. And it was, of course, error to grant the peremptory instruction for plaintiff. We do not now pass on any other assignments of error.

*Reversed and remanded.*